UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
MARJORIE FEINGOLD                                     :
                                                      :
                    Plaintiff,                        :
                                                      :
          v.                                          :   Case No. _____
                                                      :
KALED MANAGEMENT CORP.,                               :   **JURY DEMAND**
                                                      :
                    Defendant.                        :
                                                      :
------------------------------------------------------x

### COMPLAINT

Plaintiff Marjorie Feingold (a/k/a Pninah Bat Natanel) ("Ms. Feingold"), by and through her attorneys, Hogan Lovells US LLP, for her complaint (the "Complaint") against Defendant Kaled Management Corp. ("Kaled"), alleges as follows:

### Introduction

1. This case arises out of Kaled's continued and wrongful refusal to make reasonable accommodations to Ms. Feingold, who is 75 years old and is a long-time occupant of an apartment unit in a Kaled-owned building in Brooklyn, New York (the "Premises").

2. As alleged below, Ms. Feingold has multiple disabilities and, in order to continue living at the Premises, she requires various renovations that are directly related to those disabilities. Ms. Feingold has made multiple requests to Kaled to make those renovations, which constitute reasonable modifications of the Premises. Ms. Feingold has provided Kaled with detailed information on her disabilities and the required renovations. Kaled, however, has refused and instead has chosen to violate applicable housing discrimination law.

3. Ms. Feingold, therefore, brings this action against Kaled, pursuant to the federal Fair Housing Act (the "Fair Housing Act") and New York State and New York City anti-discrimination laws, seeking equitable and injunctive relief as well as damages, attorneys' fees and costs for disability-related housing discrimination.

## Jurisdiction and Venue

4. This Court has jurisdiction, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a), because this action involves a federal question regarding violations of the Fair Housing Act. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Ms. Feingold's related claims arising under New York State and New York City law.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

## Parties

6. Ms. Feingold is now, and was at all relevant times, a resident of Brooklyn, New York. She resides at the Premises, which is located at 601 East 18th Street, Apt. 209, Brooklyn, New York. Ms. Feingold has lived at the Premises since 1977.

7. Kaled is the owner of the Premises and entered into a lease for the Premises with Ms. Feingold. Upon information and belief, Kaled's principal offices are located in Westbury, New York.

## Statutory Scheme

8. The Fair Housing Act, New York State Human Rights Law, and New York City Human Rights Law all require housing providers to allow disabled residents to make reasonable

2

modifications to their premises if such modifications may be necessary to afford such person full enjoyment of the premises.[1]

9. Under the Fair Housing Act, housing providers may not discriminate in the terms, conditions, or privileges of a rental, or in the provision of services of facilities in connection with a dwelling because of disability, 42 U.S.C. § 3604(f)(2), nor may they refuse to make reasonable modifications, 42 U.S.C. § 3604(f)(3)(B).

## Factual Background

### I. Ms. Feingold's Disabilities

10. Ms. Feingold has been diagnosed with fusion of her cervical spine, lumbar radiculopathy, osteoarthritis of the right shoulder, osteoarthritis of her right knee, and a traumatic brain injury resulting in her having balance issues and being prone to falling.

11. Ms. Feingold is permanently disabled and suffers from chronic pain and seizures. Her cervical and lumbar injuries with sequelae have resulted in a very limited range of motion of her C spine and have negatively affected her arm strength and grip. Ms. Feingold is unable to lift items over five lbs. Furthermore, Ms. Feingold's lumbar spine pain and spasms prevent her from bending down or forward at the waist or from lifting her legs more than four inches. Ms. Feingold currently uses an upright walker.

12. Ms. Feingold disabilities are permanent conditions that have worsened over the last several years and are not expected to improve in the foreseeable future.

13. Ms. Feingold, therefore, has a physical impairment which substantially limits her mobility, a major life activity. Ms. Feingold has a record of this physical impairment and is

---

[1] The phrase "New York State Human Rights Law" in this Complaint will refer to New York State Executive Law § 290 *et seq.*

regarded as having such physical impairment. Ms. Feingold's physical impairment is demonstrable by medically accepted clinical or laboratory diagnostic techniques.[2]

## II. Ms. Feingold's Numerous Requests for Reasonable Accommodations and Kaled's Unjustified Refusal to Grant Them

14. Ms. Feingold has made multiple requests to Kaled over the years, beginning as early as 2021, for modifications to the Premises as reasonable accommodations to address her disabilities. Those efforts were unsuccessful.

15. In 2022, Ms. Feingold engaged the undersigned counsel to assist her with the reasonable accommodation requests.

16. After correspondence in the fall of 2022, in which Kaled (erroneously) claimed that Ms. Feingold had failed to submit a complete reasonable accommodation request and/or to provide sufficient information in support of the request, Ms. Feingold decided to submit a new request that expressly superseded the previous requests. While Ms. Feingold disagreed with Kaled's characterization of her prior requests, she decided to submit the new request in a good-faith effort to work through the issues with Kaled.

17. On March 23, 2023, Ms. Feingold (through counsel) submitted a detailed reasonable modification request to Kaled requesting various disability-related modifications to the kitchen, dining room, bathrooms, and bedrooms in the Premises. Attached hereto as **Exhibit 1** is a true and correct copy of the "Reasonable Accommodation Request."

18. The Reasonable Accommodation Request included, as Exhibits A and B thereto, (i) a detailed letter from Ms. Feingold's physician, describing why each of Ms. Feingold's

---

[2] Even though Ms. Feingold's disabilities are well documented, Kaled's employees and agents, including Jordan Platt, have questioned whether or not Ms. Feingold is disabled. These statements violate applicable law and Ms. Feingold expressly reserves the right to seek damages in connection with the foregoing (and any similar statements).

requested reasonable modifications are necessary in light of her disabilities and (ii) a report from architect Steven Zalben (the "Zalben Report") describing, together with specific examples and cost estimates, the reasonable modifications requested by Ms. Feingold. Mr. Zalben estimated that the total cost of the modifications to Kaled would be $10,450.

19. Since March 2023, the parties have engaged in correspondence regarding the modifications requested by Ms. Feingold in the Reasonable Accommodation Request (all of which were fully supported by the Zalben Report). While Kaled has agreed to some of the requested modifications, it has steadfastly (and improperly) refused to make the modifications regarding two critical areas: (1) kitchen and dining room cabinetry; and (2) the master bedroom shower.[3]

20. The Zalben Report notes that, due to Ms. Feingold's disability, "much of ... [the] existing kitchen cabinetry is currently unusable." (Ex. B to Ex. 1, at 4.) The Zalben Report provides detailed recommendations for the cabinetry issues, include renovations to existing cabinet and the installation of new cabinets in the dining room. (*See id.*, at 4.) In addition, the Zalben Report states that, with respect to the master bathroom shower modifications, "[t]he shower stall will need to be enclosed with glass or other panels to prevent water from spilling on the bathroom floor." (*Id.*, at 7.) This relates to the fact that Ms. Feingold is particularly susceptible to falls and has, on numerous occasions, slipped in the bathroom. (*Id.*, Ex. A to Ex.1, at 3.)

21. Beginning with its counsel's letter dated May 25, 2023, Kaled has refused to address the cabinetry issue adequately. (*See* **Exhibit 2** attached hereto.) Instead, Kaled described the installation of new cabinets in the dining room as "a renovation, not an accommodation,"

---

[3] The discussions between the parties since March 2023 (some of which are described in the attached correspondence) involve multiple other issues, and areas of disagreement remain. The allegations below focus on the two most significant areas of disagreement, but Ms. Feingold reserves her right to seek relief in this case requiring full compliance with the recommendations with the Zalben Report (despite any compromises that the parties have reached since March 2023).

despite the clear justification provided in the Zalben Report. (*Id.*, at 2.) In a letter dated July 24, 2023, Ms. Feingold's counsel proposed a compromise regarding cabinetry that would address the issues set forth in the Zalben Report. (*See* **Exhibit 3** attached hereto, at 3.) In a letter dated August 15, 2023, Kaled rejected such a compromise, again inaccurately describing the proposed modifications as "renovations, not accommodations." (*See* **Exhibit 4** attached hereto, at 2.) Despite additional follow-up and attempts at compromise solutions, Kaled has not agreed to make cabinetry modifications that address the issues described in the Zalben Report.

22. Kaled has similarly rejected Ms. Feingold's reasonable request—supported by the Zalben Report—to install a glass door or other barrier to prevent the spillage of water and thereby reduce the risk that Ms. Feingold will fall. For example, when Ms. Feingold's counsel re-iterated this request in a letter dated November 17, 2023 (*see* **Exhibit 5** attached hereto, at 6), Kaled's counsel stated as follows in its December 7, 2023 response: "A glass door will not be installed in the master bathroom. This is a renovation that has no correlation to Ms. Feingold's accommodation request." (*See* **Exhibit 6** attached hereto, at 3.)

23. Kaled ignores the fact that the Zalben Report linked the shower door request to Ms. Feingold's disabilities. Kaled also fails to state why this accommodation would impose an undue hardship, especially in light of the other modifications that would be made to the master bathroom.

24. In summary, Kaled has wrongfully denied certain reasonable modifications to the Premises that would accommodate Ms. Feingold's disabilities and would not impose any undue hardship on Kaled. Kaled disregarded recommendations from the Zalben Report and has substituted its own unreasonable and unsupported justifications for denying the modifications. That is improper and a violation of applicable law.

25. Accordingly, Ms. Feingold seeks the declaratory relief, injunctive relief, damages (both compensatory and punitive damages), and attorneys' fees and costs requested below.

## COUNT I

### (Violation of Fair Housing Act — 42 U.S.C. § 3601 *et seq*.)

26. Ms. Feingold realleges and incorporates by reference each and every allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

27. During all times relevant to the Complaint, Ms. Feingold has had a "handicap" as defined in 42 U.S.C. § 3602(h) by virtue of having a physical impairment which substantially limits her mobility (a major life activity), 42 U.S.C. § 3602(h)(1), a record of having such an impairment, 42 U.S.C. § 3602(h)(2), and being regarded as having such an impairment, 42 U.S.C. § 3602(h)(3).[4] Consequently, Ms. Feingold is a person with a disability under the Fair Housing Act.

28. Ms. Feingold is an "aggrieved person" as defined by 42 U.S.C. §§ 3602(i)(1) and 3613(a)(1)(A).

29. Kaled is subject to the Fair Housing Act as the owner of a covered multifamily dwelling consisting of four or more units, 42 U.S.C. § 3604(f)(7).

30. Kaled has discriminated against Ms. Feingold by refusing to complete the requested reasonable modifications to the Premises in violation of 42 U.S.C. § 3604(f)(3)(A).

31. Ms. Feingold's requested reasonable modifications are necessary to afford her full enjoyment of the premises.

32. The modifications sought by Ms. Feingold are reasonable and do not cause an undue financial burden.

---

[4] The term "handicap" comes from the statutory definition. We will use the term "disability" in lieu of "handicap" below.

33. By reason of the foregoing, Kaled has acted in violation of the Fair Housing Act.

34. Ms. Feingold is entitled to declaratory and injunctive relief to remedy Kaled's violation of the Fair Housing Act.

35. Ms. Feingold was also injured and has suffered actual and economic damages, including, but not limited to, emotional distress as a direct and proximate result of Kaled's unlawful discrimination in violation of the Fair Housing Act.

36. Moreover, Ms. Feingold is entitled to punitive damages under 42 U.S.C. § 3613(c) because Kaled acted intentionally, willfully, and with reckless disregard for Ms. Feingold's rights.

## COUNT II

**(Violation of New York State Human Rights Law — N.Y. Exec. Law § 290 *et seq*.)**

37. Ms. Feingold realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

38. Ms. Feingold and Kaled are "persons" as that term is defined in New York State Executive Law § 292(1).

39. Ms. Feingold has a "disability" as that term is defined by New York State Executive Law § 292(21).

40. The Premises is a "housing accommodation" as that term is defined in New York State Executive Law § 292(10). The Premises is within a multifamily dwelling that contains three or more separate housing accommodations. New York State Executive Law § 292(12).

41. Kaled has discriminated against Ms. Feingold, on the basis of her disabilities, in the terms, conditions or privilege of rental or lease of such housing accommodation in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

42. Kaled has refused to permit, at the expense of Ms. Feingold, reasonable modifications of the Premises in order to afford her the full use and enjoyment of the premises in violation of New York State Executive Law § 296(18)(1).

43. Kaled's failure to permit such reasonable modification requests is a direct and proximate cause of Ms. Feingold's injury and entitles Ms. Feingold to actual and economic damages, including, but not limited to, emotional distress, mental anguish, violation of her civil rights, loss of dignity, anxiety, and otherwise sustained injury.

44. Kaled's discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of Ms. Feingold. Kaled also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Ms. Feingold is also entitled to punitive damages.

## COUNT III

**(Violation of New York City Human Rights Law — N.Y.C. Admin. Code § 8-102)**

45. Ms. Feingold realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

46. During all relevant times, Ms. Feingold has had a disability as defined by New York City Human Rights Law, New York City Administrative Code § 8-102.

47. Ms. Feingold is a person as defined by New York City Human Rights Law, New York City Administrative Code § 8-102.

48. The building in which the Premises is located is a "housing accommodation" as defined by New York City Human Rights Law, New York City Administrative Code § 8-102.

49. Ms. Feingold has requested "reasonable accommodations" as defined in New York City Human Rights Law, New York City Administrative Code § 8-102.

50. Kaled discriminated against Ms. Feingold by failing to complete requests for reasonable modifications to enable her, as a person with a disability, to have equal opportunity to use and enjoy a dwelling in violation of New York City Human Rights Law, New York City Administrative Code § 8-107(15).

51. The reasonable accommodations requested by Ms. Feingold did not impose an undue hardship on Kaled.

52. The reasonable accommodations requested by Ms. Feingold would afford her the equal opportunity to use and enjoy the Premises.

53. By failing to complete Ms. Feingold's requests for reasonable modifications, Kaled has acted in violation of the New York City Human Rights Law.

54. Kaled's failure to complete the foregoing reasonable modification requests is a direct and proximate cause of Ms. Feingold's injury and entitles her to actual and economic damages, including, but not limited to, emotional distress, mental anguish, violation of her civil rights, loss of dignity, anxiety, and otherwise sustained injury.

55. Ms. Feingold is also entitled to punitive damages under New York City Human Rights Law § 700.29(A)(4) because Kaled acted intentionally, willfully, and with reckless disregard for Ms. Feingold's rights.

### **PRAYER FOR RELIEF**

WHEREFORE, Ms. Feingold respectfully requests that this Court:

A. Enter against Kaled a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, finding that it has violated the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, New York Executive Law § 290 *et seq.*, and the New York City Human Rights Law, NYC Administrative Code § 8-101 *et seq.*;

B. Enter against Kaled, pursuant to 42 U.S.C. § 3613(c)(1), an order and judgment permanently enjoining Kaled, its agents, employees, and all other persons in active concert or participating with it from discriminating against Ms. Feingold in violation of the fair housing laws set forth above, including, but not limited, to an order and judgment permanently enjoining the foregoing from refusing to make reasonable accommodations for Ms. Feingold's disabilities;

C. Enter against Kaled a permanent injunction requiring it to make the necessary reasonable modifications to the Premises;

D. Award such damages to Ms. Feingold as will fully compensate her for the injury and loss caused by Kaled's unlawful practices in violation of the Fair Housing Act;

E. Award such damages to Ms. Feingold as will fully compensate her for the injury and loss caused by Kaled's unlawful practices in violation of the New York State Human Rights Law;

F. Award such damages to Ms. Feingold as will fully compensate her for the injury and loss caused by Kaled's unlawful practices in violation of the New York City Human Rights Law;

G. Award appropriate punitive damages to Ms. Feingold for Kaled's intentional and/or willful acts made in disregard of her rights under the Fair Housing Act, New York State Humans Rights Law, and/or New York City Human Rights Law set forth above;

H. Award Ms. Feingold reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

I. Grant such other and further relief as may be just and proper.

## JURY DEMAND

Ms. Feingold hereby demands a trial by jury, pursuant to Fed. R. Civ. P. 38, on all claims subject to the right of jury trial.

Dated:  July 3, 2024          Respectfully submitted,

*/s/ Pieter Van Tol*

Pieter Van Tol
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017
Tel: +1 212.918.3000
Fax: +1 212.918.3100
pieter.vantol@hoganlovells.com

Toni Cross *
HOGAN LOVELLS US LLP
555 13th St. NW
Washington, DC 20004
Tel: +1 202.637.5600
Fax: +1 202.637.5910
toni.cross@hoganlovells.com

\*  *Pro hac vice forthcoming*

*Counsel for Plaintiff Marjorie Feingold*